DICKSON et al. v. WILDMAN et al.

(Circuit Court of Appeals, Fifth Circuit. November 22, 1910.)

No. 2,066.

1. DEEDS (§ 123*)—CONSTRUCTION—"INTEREST IN LANDS."

The natural and ordinary meaning of the phrase "interest in lands" includes the entire right held in them, and, as used in an instrument conveying the grantor's interest without qualification, it operates to convey all the rights of the grantor.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 123.*

For other definitions, see Words and Phrases, vol. 4, pp. 3692–3709; vol. 8, p. 7691.]

2. DEEDS (§ 97*)—CONSTRUCTION — INTEREST CONVEYED—CONFLICTING PROVISIONS.

The settled rule of construction in Alabama, as in many other jurisdictions, is that, in case of repugnancy between the granting clause and other parts of a deed, the former will prevail and determine the interest conveyed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 270; Dec. Dig. § 97.*]

---

3. COURTS (§ 367*)—FEDERAL COURTS—STATE LAWS AS RULES OF DECISION—CONSTRUCTIONS OF DEEDS.

In construing a deed to real estate, a federal court will follow the settled law of the state in which the property is situated.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 959; Dec. Dig. § 367.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, in 11 C. C. A. 71; Hill v. Hite, in 29 C. C. A. 553.]

4. DEEDS (§ 124*)—CONSTRUCTION — INTEREST CONVEYED—"LIFE ESTATE AND INTEREST."

A deed recited that the grantor as survivor of his deceased wife had a life estate in certain described real estate which was a part of her statutory separate estate, and that he had agreed to sell the grantee his "life estate and interest" therein. By the granting clause he conveyed to the grantee "and to his heirs and assigns forever, all the right, title, interest, estate, possession, claim and demand whatsoever, as well in law as in equity" which he had in the property, and the habendum was to have and to hold his "life estate and interest * * *, and no more, unto said party of the second part his heirs and assigns forever." In fact, the property was part of the equitable separate estate of his wife, and, under the law of the state, a prior conveyance from her to him was effective to convey to him the title in fee simple. Held, that, under the rule of decision in Alabama that the granting clause prevails over the recitals or habendum clause of a deed in case of conflict as to the estate conveyed, such deed conveyed the title in fee simple.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 344–355, 416–428, 434, 435; Dec. Dig. § 124.*]

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

Action at law by Annie Dickson and others against Minnie Wildman and others. Judgment (175 Fed. 580) for defendants, and plaintiffs bring error. Affirmed.

John London and Henry Fitts, for plaintiffs in error.
Ormond Somerville, for defendants in error.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

SHELBY, Circuit Judge. The plaintiffs are the children and minor heirs of Barton F. Dickson, deceased. They claim the real estate sued for by inheritance from him. In his lifetime he conveyed it to George A. Searcy. The plaintiffs contend that he conveyed only a life estate. The Circuit Court held, however, that the conveyance carried the fee-simple title, and that the plaintiffs, therefore, could not recover. This ruling the plaintiffs assign as error.

1. The main question presented for decision is whether the deed from Barton F. Dickson conveyed a fee-simple title, or only an estate for the life of the grantor. Here is the deed, and we place in italics those words to which the parties call special attention as tending to show the true intention of the grantor:

"Whereas, the late Mrs. Katie E. Dickson, now deceased, was seized and possessed in her life time in fee of the real property hereinafter described, the same then being a part of the corpus of her statutory separate estate un-

der the laws of Alabama, and whereas Barton F. Dickson, who was the husband of the said Mrs. Katie E. Dickson, deceased, has survived her; and under and by virtue of the laws of said state, became entitled to the use and occupation of said real property *for and during the term of his natural life;* and (since the death of said Mrs. Katie E. Dickson) he has been in quiet and undisturbed possession and enjoyment of the same; and whereas said Barton F. Dickson has agreed to sell to said George A. Searcy *his life estate and interest* in the real property aforesaid:

"This indenture made and entered into between Barton F. Dickson, party of the first part, and George A. Searcy, party of the second part, witnesseth: That said party of the first part, for and in consideration of the sum of two thousand five hundred dollars lawful money of the United States of America, to him in hand paid by the party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, and sold, and by these presents doth grant, bargain and sell unto the said party of the second part *and to his heirs and assigns forever, all of the right, title, interest, estate, possession, claim and demand whatsoever, as well in law as in equity* (of, in and to the following described real property) of said party of the first part, and of every part and parcel thereof, with the appurtenances, that is to say: (We omit description).

"To have and to hold *all and singular the life estate and interest which said party of the first part hath* in the above mentioned and described premises, together with the appurtenances, *and no more*, unto said party of the second part, *his heirs and assigns forever.*

"In witness whereof, the said party of the first part hereunto sets his hand and seal this 4th day of December, A. D. 1883.

                                        "Barton Flinn Dickson. [Seal.]
"Witness:
       "John C. Calhoun.
       "W. R. Foster."

The primary rule in the construction of a deed is to learn, if possible, from the language employed the intention of the parties, and then effect should be given to such intention if it can be done without violation of law. The aim is to ascertain the meaning of the words which have been used, looking at them as constituting a complete instrument, and giving effect to every clause and every word if possible, rejecting none unless plainly repugnant to the general intent. When there is no necessary repugnancy in the different parts of the deed, and the intention of the grantor can be ascertained from the words used, read with regard to his situation when the deed was executed, there is no need to resort to other rules. The object of the so-called technical rules of construction is to enable the court to discover and enforce the primary rule—to give effect to the intention.

The plaintiff asks: If the grantor intended to convey in fee simple, why did he not use the few and apt words required, and no more? The defendants ask with equal relevancy: If the grantor intended to convey a life estate only, why did he not use only the few words required to effect that purpose? The questions become more serious, if they do not suggest a mystery, when we consider that the writer of the deed was a lawyer.

After careful consideration, we have reached the conclusion that the record and deed disclose an intention on the part of the grantor to certainly grant a life estate, and to convey also any and all other estate and interest he might have in the property. If it was his intention to do this, and if he was confident of his right to the extent of a life estate, but uncertain as to having other and greater interest,

or uncertain as to the extent and character of such other interest, that fact would account, we think, for the unusual combination of words used in the deed. It has been suggested by a thoughtful judge that, before reading a deed, we should begin to seek the intention by placing ourselves "in the seat" occupied by the grantor at the time the instrument was executed. Walsh v. Hill, 38 Cal. 481. The real estate in question came to the grantor, Barton F. Dickson, from his wife. Before he married her, he made an antenuptial agreement whereby he relinquished all of his marital rights to her property. This relinquishment on their marriage made this property her equitable separate estate. Without the relinquishment, the property, under the law of Alabama, as it existed at that time, would have been her separate statutory estate. She could make a valid conveyance to her husband of her equitable separate estate, but she could not at that time have made a conveyance to him effective at law of her statutory separate estate. The deed of Mrs. Dickson to her husband was valid only because of the fact that the husband had previously by the antenuptial agreement relinquished his marital rights. The Alabama law relating to the estates of married women and the distinction between their equitable and statutory separate estates constituted a system not easily understood, and was subject, during its existence, to conflicting decisions even by the court of last resort. It is not improbable that the grantor, or that even his attorney, was at that time uncertain as to the effect of the relinquishment by the husband and the subsequent conveyance by the wife to the husband. That such uncertainty did exist in their minds is indicated by the statement in the introductory recitals of the deed that the property in question was "a part of the corpus of her statutory separate estate under the laws of Alabama." This was an erroneous description of her estate. In fact, her estate was an equitable separate estate, which she could convey as if she were a feme sole. Whittaker v. Van Hoose, 157 Ala. 286, 47 South. 741. If the grantor had been right in supposing that her estate was a statutory separate estate, and if the conveyance by his wife to him had been ineffectual, he would then, under the Alabama statute (Code Ala. 1907, § 3765), have had at her death an estate by the curtesy. This life estate he certainly meant to convey, and also any interest that he had by virtue of his wife's deed to him. He was probably not sure of the law that made the wife's estate under the circumstances an equitable and not a statutory separate estate, and therefore he did not know that her deed to him passed the fee to him. The fact that a lawyer wrote the deed does not remove the probability that the deed was executed in ignorance of the extent and quality of the grantor's interest. There is no conclusive presumption that even a lawyer knows all the law when the deed that he writes shows that he did not know part of it. A scrivener may be well informed as to the terms used by a conveyancer, and yet not be informed as to the laws of descents and distribution and the capacity of married women to make contracts relating to their separate estates. While the deed shows that some skill was used in the selection of words, it distinctly shows ignorance or uncertainty as to the character of the grantor's title.

183 F.—26

Both in the preliminary recitals and in the habendum there is coupled with the words "life estate" the words "and interest," indicating, we think, not only an intention to convey the life estate, but also any other interest that the grantor had in the property. Being uncertain what title or claim was bestowed on him by the wife's conveyance to him, a word is selected that would embrace it whatever it might be. "The word 'interest' is the broadest term applicable to claims in or upon real estate." Ormsby v. Ottman, 85 Fed. 492, 497, 29 C. C. A. 295. The natural and ordinary meaning of the phrase "interest in lands" includes the entire right held in them, and, as used in an instrument including the grantor's interest without qualification, it operates to convey all the rights of the grantor. Ragsdale v. Mays, 65 Tex. 255, 257. In the granting clause, we also find the word "interest" coupled with other words—"right, title," etc. —and we also find, as probably showing a doubt as to whether his "interest" acquired by the wife's deed was legal or equitable, that the clause is framed to cover all rights "as well in law as in equity."

It is not questioned that the granting clause of the deed is sufficient to carry the fee or any interest the grantor had. It grants to the vendee "and to his heirs and assigns forever, all of the right, title, interest, estate, possession, claim and demand whatsoever, as well in law as in equity (of, in and to the following described real property) of said party of the first part, and of every part and parcel thereof, with the appurtenances. * * *" This grant is as complete and comprehensive as language can make it, and this plain and unequivocal language should not be made to yield to any uncertain and equivocal expressions in either the introductory recitals or the habendum. The question does not arise as to what should be done in case of irreconcilable conflict between the parts of the deed until it appears that such conflict exists. The introductory recitals show that the grantor erroneously believed that upon the death of his wife he became tenant by the curtesy, notwithstanding she had conveyed the real estate to him, but it states an agreement to sell his "life estate *and interest*" in the property. If effect is given to the entire description of what it was agreed to sell—"life estate and interest" in the property—it is sufficiently comprehensive to prevent conflict with the granting clause. The same is true of the habendum:

"To have and to hold all and singular the life estate and interest which said party of the first part hath in the above mentioned and described premises, together with the appurtenances, and no more, unto said party of the second part, his heirs and assigns forever."

Not only the word "interest" repeated here seems to conflict with the idea that a life estate only was meant to be conveyed, but the use of the words "heirs and assigns forever" tends the same way. If a life estate only had been in the grantor's mind, the word "interest" would probably have been omitted, and, instead of the words "his heirs and assigns forever," the words "for and during the lifetime of the grantor" would have been substituted. The words "no more" create no difficulty if the other parts of the deed show an intention to convey all "interest" of whatever kind the grantor had, but to con-

vey only such interest. The mere recital of the grantor's claim to curtesy is not inconsistent with the additional claim of other interest in the property. Taken altogether, the deed, we think, shows such other claim, though it is not defined, and shows an intention to convey all the title and interest, legal and equitable, that the grantor possessed. As he had the fee, the fee passed by the deed.

2. If it were conceded that there was repugnancy between the granting clause on the one side and the preliminary recitals and the habendum on the other, and that the conflict was such that the true intent of the grantor could not be ascertained, it is manifest that the court must decide which part of the deed shall prevail. The rule in such case is that the granting clause determines the interest conveyed, and when it is clear and unambiguous, as in the deed in question here, it prevails over introductory recitals in conflict with it, and prevails also over the habendum if that is in conflict with it. The reason sometimes given for the rule is that a deed founded upon a valuable consideration is to be construed most strongly against the grantor, and, when the conflict is in the habendum, that the grantor in the latter part of the deed will not be permitted to deny or retract the grant previously made. The rule is very old, and it may be that it is founded on an effort to enforce the cardinal rule to ascertain and give effect to the intention. The granting clause is naturally looked to to see what it was intended to convey, whereas recitals are often merely introductory, and are not a necessary part of the deed. The granting clause is the very essence of the contract. It is required to transfer title, but the habendum clause is not absolutely necessary to make a deed effective. Where a conflict exists, therefore, in the different parts of a deed, the true intent of the grantor as to what was intended to be conveyed is more likely to be found in the granting clause. The settled rule of construction in Alabama and in many other jurisdictions is that in case of repugnancy between the granting clause and other parts of the deed the former will prevail. Webb v. Webb's Heirs, 29 Ala. 588; McMillan v. Craft, 135 Ala. 148, 33 South. 26; Dickson v. Van Hoose, 157 Ala. 459, 47 South. 718, 19 L. R. A. (N. S.) 719; Moran v. Somes, 154 Mass. 200, 28 N. E. 152; Miller v. Tunica County, 67 Miss. 651, 7 South. 429; Dunbar v. Aldrich, 79 Miss. 698, 31 South. 341; Bodine's Adm'rs v. Arthur, 91 Ky. 53, 14 S. W. 904, 34 Am. St. Rep. 162; Carl Lee v. Ellsberry, 82 Ark. 209, 101 S. W. 407, 12 L. R. A. (N. S.) 956, 118 Am. St. Rep. 60; Smith v. Crosby, 86 Tex. 15, 23 S. W. 10, 40 Am. St. Rep. 818; Wilcoxson v. Sprague, 51 Cal. 640; McLennan v. McDonnell, 78 Cal. 273, 20 Pac. 566; Tate v. Clement, 176 Pa. 550, 35 Atl. 214; Maker v. Lazell, 83 Me. 562, 22 Atl. 474, 23 Am. St. Rep. 795; Hobbs v. Payson, 85 Me. 498, 27 Atl. 519; G. B. & M. C. Co. v. Hewitt, 55 Wis. 96, 12 N. W. 382, 42 Am. Rep. 701; Ingleby v. Swift, 10 Bingham, 84; 9 Am. & Eng. Ency. of Law, 139; 17 Am. & Eng. Ency. Law, 8.

3. In Clarke v. Clarke, 178 U. S. 186, 191, 20 Sup. Ct. 873, 874 (44 L. Ed. 1028), Mr. Justice White, speaking for the court, and citing earlier cases, said:

"It is a principle firmly established that to the law of the state in which the land is situated we must look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of wills and other conveyances."

In Simpson County v. Wisner-Cox Lumber & Mfg. Co., 170 Fed. 52, 55, 95 C. C. A. 227, this court held in construing a lease for 99 years:

"It would be intolerable to have one rule prevailing in the state courts and another in the federal courts as to the construction of state statutes and leases of real estate situated in the state. * * * The laws of the state, as expounded by its court of last resort, constitute the law of the land as to the conveyance, lease, and titles of real estate situated within the state."

In 1857 the Supreme Court of Alabama declared the rule to which we have already referred in this opinion. In the case of Webb v. Webb's Heirs, 29 Ala. 588, an antenuptial deed contained preliminary recitals describing the interest intended to be conveyed as a one-third interest in fee, but the granting clause granted a life estate. In the opinion Judge Stone says:

"There is a repugnance between the introductory recitals in the deed and the granting clause. * * * The general rule is admitted, that parties are estopped from denying the facts recited in their deeds. Neither will they be permitted, in a court of law, to prove a consideration different from that expressed, so as to change the character of the instrument. In the present case, the deed furnishes its own correction. The granting clause determines the interest intended to be conveyed, and prevails over the introductory statement."

In 1902 the adherence of that court to that rule is announced by the court, holding that, where there is a repugnant conflict between the introductory recitals in a deed and the granting clause, the latter must prevail, since the granting clause determines the interest intended to be conveyed. McMillan v. Craft, 135 Ala. 148, 33 South. 26.

Before instituting in the federal court the suit we are now deciding, the same plaintiffs sued for the real estate claimed in this action in the state court, relying on the same title. The case reached the Supreme Court of Alabama, and that court adhered to and applied the rule as to the granting clause that was announced in 1857 in Webb v. Webb's Heirs, supra. Dickson v. Van Hoose, 157 Ala. 459, 47 South. 718, 19 L. R. A. (N. S.) 719. If we differed from the reasoning and conclusion of the Alabama Supreme Court—and we do not—we would be reluctant to interfere, and are probably bound by the rule announced as one relating to real estate in Alabama.

The judgment of the Circuit Court is affirmed.

PARDEE, Circuit Judge, does not concur.