HOOD et al. v. McGEHEE et al.

(Circuit Court, N. D. Alabama, S. D. June 20, 1911.)

No. 214.

1. COURTS (§ 367*)—DECISION—CONCLUSIVENESS.

The decision of the Alabama Supreme Court that children adopted according to the laws of foreign states are not entitled to take property by descent in Alabama from their adopting parents, being a fixed rule of property in Alabama, is conclusive on the federal courts in determining the devolution of property in Alabama unless in violation of the federal Constitution.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

2. ADOPTION (§ 25*)—FOREIGN ADOPTION—FULL FAITH AND CREDIT.

Since each state has exclusive jurisdiction to regulate the transfer of real estate within its limits, the Alabama rule that children adopted under the laws of foreign states are not entitled to take property in Alabama by descent from their adopting parents is not in violation of the constitutional provision, requiring each state to give full faith and credit to the judicial proceedings of every other state.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 6, 37; Dec. Dig. § 25.*]

3. SPECIFIC PERFORMANCE (§ 86*)—CONTRACT TO DEVISE.

When adoption proceedings are ineffective in themselves or are accompanied by a definite promise by the adopting parents to leave all or a part of their property to the adopted child on the parents' death, such proceedings and promise may amount to a contract which, though made for the children by a third person, may, when fully performed by the children, be specifically enforced against the heirs of the adopting parents.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 223, 224; Dec. Dig. § 86.*]

4. ADOPTION (§ 25*)—FOREIGN PROCEEDINGS—VALIDITY—EFFECT.

Where complainants were adopted in Louisiana by an act fully complying with the Louisiana law, it would be presumed, after the death of the adopting parents, that they intended such proceedings to have only the effect legally attached thereto, so that, on its being determined that the proceedings were ineffectual to entitle complainants to inherit from their adopting parents lands acquired by them in Alabama after the act of adoption, such adoption proceedings could not be regarded as a prom-

---

ise by the adopting parents to leave such property to complainants and specifically enforced as against the parents' heirs.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 6, 37; Dec. Dig. § 25.*]

In Equity. Bill by Ida Richardson Hood and others against J. B. McGehee and others. On demurrer to amended bill. Sustained.

Percy, Benners & Burr, for complainants.
Tillman, Bradley & Morrow, for defendants.

GRUBB, District Judge. The bill of complaint in this cause was filed to determine the title to real estate in Alabama of which the plaintiffs are in possession through a tenant. The common source of title is George T. McGehee. The plaintiffs are his adoptive children by proceedings had under the laws of Louisiana. The defendants are the next of kin, who would inherit his real estate in Alabama, under its statute of descents, McGehee having died intestate, unless the plaintiffs are entitled to it.

The plaintiffs support their right (1) under the statute of descents of Alabama, claiming to be children of intestate, and (2) by virtue of a contract claimed to have arisen from the Louisiana adoption proceedings, though ineffective in Alabama, between McGehee and wife, on the one hand, and the plaintiffs and their tutrix, on the other hand; they being, at the time, minors of tender years, the effect of which is alleged to have been to vest title in them in all the property of McGehee and his wife upon their deaths. The defendants deny that title to the lands in Alabama passes to plaintiffs under either theory.

1. The Supreme Court of Alabama, in the case of Brown v. Finley, 157 Ala. 424, 47 South. 577, 21 L. R. A. (N. S.) 679, 131 Am. St. Rep. 68, construed the Alabama statute of descents so as to exclude adopted children, by proceedings in other states, from the term "children" as used in subdivision 1 of section 3754 of the Alabama Code, 1907, which provides for the descent of real estate in this state, holding that foreign adoption statutes had no extraterritorial force.

[1] The Supreme Court, also, in the same case, declared this construction to be a fixed rule of property in Alabama. This concludes the federal court, unless by reason of the violation of some of the provisions of the federal Constitution, even though the Alabama rule is, as appears to be the case, contrary to the current of authority. Dickson v. Wildman, 183 Fed. 398, 105 C. C. A. 618; Clarke v. Clarke, 178 U. S. 186, 20 Sup. Ct. 873, 44 L. Ed. 1028; Simpson v. Wisner-Cox Lumber Co., 170 Fed. 52, 95 C. C. A. 227.

[2] The plaintiffs claim that the "full faith and credit" clause of the Constitution requires the Alabama court, not only to recognize the Louisiana adoption proceedings as valid to confer on the plaintiffs the status of adopted children, but to confer on them the same rights of inheritance to real estate in Alabama as are conferred on natural children. Conceding that the Louisiana adoption proceedings come within the meaning of public acts, records, or judicial proceedings, and are entitled to full faith in the sense of compelling recognition by other

states of the adoptive filial relation created by them, it does not follow that the right of inheritance to real property follows such status, when recognized. Each state has exclusive jurisdiction of the regulation of the transfer and descent of real estate within its limits. It would be competent for the Legislature of Alabama to deny the right to inherit real property to children adopted in its own courts by its own procedure. It would be competent for it to confer such rights on children of its own adoption and deny it to those of the adoption of foreign states. This is what Alabama legislation, as construed by its court of last resort, has accomplished. Section 5202, Alabama Code of 1907, provides a procedure to be followed for the adoption of children so as to make them capable of inheriting in Alabama real and personal property of the adoptive parent. The child adopted in Alabama under this section is given the right by the terms of section 5202 and without necessity of resort to the statute of descents. No right to inherit is conferred on children of foreign adoption by section 5202. The Supreme Court construed the word "children" in the statute of descents (subdivision 1, § 3754, Code 1907) as not including children of foreign adoption. It was competent for the Legislature to so enact and for the court to so construe its enactment, the state being absolutely free to regulate the descent of real estate within its limits as it sees fit. For these reasons the plaintiffs cannot claim the lands described in the bill under the Alabama statute of descents. Olmsted v. Olmsted, 216 U. S. 386, 30 Sup. Ct. 292, 54 L. Ed. 530, 25 L. R. A. (N. S.) 1272; Fall v. Eastin, 215 U. S. 1, 30 Sup. Ct. 3, 54 L. Ed. 65, 23 L. R. A. (N. S.) 924.

2. The plaintiffs contend, further, that Louisiana adoption proceedings have the effect of a contract between the adopting parents and the adopted children, to give them the same rights in the parents' real estate upon their death as if they were the natural children of the parents, and that this contract will be decreed to be specifically performed by a court of equity, after full performance by the parties. The act of adoption contains a declaration of adoption by McGehee and wife, a provision obligating them to support, maintain, and educate the adopted children, and an agreement investing "them with all the rights and benefits of legitimate children in their estate, in the same manner and to the same extent" as if they "had been the daughters of said George T. McGehee and Elizabeth B. McGehee." It also contains an agreement on the part of their tutrix to surrender the entire parental authority over them to McGehee and wife. The bill avers that the adopting parents, "after their adoption and through many years of association that followed," not only tenderly reared, educated, and carefully guarded them from all harm, but, in truth and fact, they were beloved and cherished by said adopting parents "as if they were their own children." The bill avers the performance of the children also in these words:

"That your orators on their part performed all the duties of children towards their adopting parents."

[3] The weight of authority seems to hold that ineffective adoption proceedings in themselves, or when accompanied by a sufficiently

definite promise to leave all or a certain part of the adopting parents' property to the adopted child upon the death of the parents, may amount to a contract, which though made for the children by a third person may, when fully performed by the children, be specifically enforced against the heirs of the adopting parents. This has been held to be the rule in a state (New Jersey) in which there was no statute authorizing adoption, and also in a state (Michigan) in which such a statute had been declared unconstitutional. In all cases, certainty in terms, fairness and full performance by the children are held to be requisite. The cases supporting the doctrine are: Jaffee v. Jacobson, 48 Fed. 21, 1 C. C. A. 11, 14 L. R. A. 352, and cases cited; Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, 82 Am. St. Rep. 647; Wright v. Wright, 99 Mich. 170, 58 N. W. 54, 23 L. R. A. 196; Sharkey v. McDermott, 91 Mo. 647, 4 S. W. 107, 60 Am. Rep. 270; Van Dyne v. Vreeland, 11 N. J. Eq. 370; Teats v. Flanders, 118 Mo. 660, 24 S. W. 126; Healy v. Simpson, 113 Mo. 340, 20 S. W. 881; Van Tine v. Van Tine, 15 Atl. (N. J.) 249, 1 L. R. A. 155; Chehak v. Battles, 133 Iowa, 107, 110 N. W. 330, 8 L. R. A. (N. S.) 1130; 1 Cyc. p. 936, and cases cited in note; 1 Am. & Eng. Enc. of Law (2d Ed.) p. 728, and note; Fusilier v. Masse, 4 La. 424. Contra: Wallace v. Rappleye, 103 Ill. 229; Wallace v. Long, 105 Ind. 522, 5 N. E. 666, 55 Am. Rep. 222; Shearer v. Weaver, 56 Iowa, 578, 9 N. W. 907; Albring v. Ward, 137 Mich. 352, 100 N. W. 609; Bowins v. English, 138 Mich. 178, 101 N. W. 204.

[4] The question, then, is whether in this case the notarial act of adoption can be construed as a contract to leave the plaintiffs an interest in intestate's property, wherever situated and whenever acquired, owned by him at the time of his death, for it is conceded that no such contract exists in this case apart from the notarial act.

The language of the notarial act, with reference to the rights of inheritance conferred by it on the plaintiffs, is substantially that of the Louisiana adoption statute. Its use in the notarial act has, therefore, no significance other than to express what the law would imply. If it had been omitted, the legal meaning of the notarial act would have been unchanged. The adoption proceedings clearly show that the parties were proceeding under the Louisiana act, and with no purpose to confer rights on the adopted children, other than those conferred by adoption under that law.

If, then, any such contract exists, it must be one that is implied from the proceedings of adoption, as distinguished from any peculiar language in which they are couched. The principle of giving contractual effect to defective adoption proceedings, in order that the intention of the parties may not fail of accomplishment by reason of such defect, has no application to the facts of this case; for here, the proceedings are valid and sufficient to create the relation of adopted children with all their incidental personal and property rights. The intention of the parties was in no way disappointed either as to the fact of adoption or as to the rights conferred by it on plaintiffs. They accomplished all they expected. This is especially true since, when the adoption proceedings were had the adopting parents owned no prop-

erty in Alabama, and could at that time have had no disappointed expectations as to the effect of the Louisiana adoption upon the transmission of such property; and the Louisiana proceedings were fully recognized in Mississippi, in which state the adopting parents were then domiciled and presumably owned property. So there was no intention in the minds of the adopting parents or of the tutrix at the time of the adoption that failed of accomplishment as a result of the Louisiana proceeding. It accomplished all the parties then had in mind or desired, and if the parents had never acquired property in Alabama, thereafter, no question of its sufficiency would have been presented. No unexecuted intention would have remained for enforcement by a decree.

The original sufficiency of the adoption to answer the intentions of the parties was turned into its present insufficiency by reason of the subsequent acquisition by the adopting parent of real estate in Alabama, a state which did not recognize the Louisiana proceedings as effective to transmit property under its statute of descents. This subsequently occurring fact cannot affect the intention of the parties at the time of the adoption or change the transaction, then entered into by them, nor can it justify the implication of an agreement to do what the parties then had no intention of doing, viz., of effecting a transfer of property by a method other than the adoption proceedings. The Louisiana proceeding was effective, in view of the location of the property then owned by the adopting parent, to do all the parties intended and for that reason it was resorted to. The inference is irresistible, from its adequacy to the then needs of the parties, that nothing more was intended by them than adoption. If nothing more than an adoption under the Louisiana law, with its incident property and personal rights, was then intended, there is no room for more to be implied, even though a change of ownership thereafter might make it desirable. The law by implication will not add a feature to the transaction, the occasion for the significance of which did not arise until long after the transaction was completed. The acts and contracts of parties are to be construed by their intentions when the acts were performed or the contracts made, and not by intentions which could have first been entertained only long after the commission of the acts or the making of the contracts.

The parties contented themselves with the adoption of plaintiffs under the Louisiana law because that method at that time answered completely their exigency. The plaintiffs therefore were vested by the adoption proceedings with the rights, and only the rights, of adopted children under the Louisiana law, for this was all the parties to the adoption thought necessary, at that time, to confer on them.

The situation, effected by the adoption, only becoming inadequate when the adopting parent, long afterwards, purchased property in Alabama, the remedy for the situation lay in measures then to be taken to transmit the title to such newly acquired property. This is the general rule that prevails as to subsequently acquired property, not legally affected by a previously executed instrument, though the parties may desire it to be so affected.

If there had been an agreement to leave plaintiffs a share in the adopting parent's estate on his death, separate from and independent of the adoption, and the means selected by the parties to accomplish the agreement had failed to do so, equity might enforce the agreement by supplying a method in lieu of the ineffective one, selected by the parties. In this case, however, the purpose of the parties was merely to effect the adoption of plaintiffs. They selected the Louisiana law to accomplish the adoption and it did accomplish it. There was no agreement as to property, other than was implied in the adoption, which conferred on plaintiffs the rights of inheritance of adopted children under the Louisiana law. This was all they were entitled to by virtue of the agreement to adopt them, and this they obtained. Even if the adopting parent had owned the Alabama property at the time of the adoption, this would be true. Much more is it true, in view of the fact that the Louisiana adoption proceeding was competent to vest in plaintiffs all the property rights that were then in contemplation of the parties to it.

If the purpose had been to leave to plaintiffs an interest in the estate of the adopting parent, and the adoption under the Louisiana law had been unadvisedly selected as a proper means of accomplishing this, a different case would be presented. In this case the controlling purpose was the adoption of the plaintiffs. The devolution of the property of the adopting parent to them was secondary and merely incidental to the relation established by the adoption (petition for adoption, Complainants' Exhibit B). Plaintiffs were only entitled to the property rights of adopted children in Louisiana, and they were acquired by them by the adoption.

The only theory, therefore, on which the plaintiffs' rights can prevail is that there was an agreement, independent of the adoption, to leave to the plaintiffs shares in intestate's property. The moment plaintiffs' rights in the Alabama property are attempted to be worked out through the Louisiana adoption proceedings or the agreement to adopt, effectuated under the Louisiana law, we are confronted with the proposition that parties adopting that method, without further agreement, must intend to confer only such rights as it availed to confer. When it is conceded, as it is, that there is no agreement shown by the record, other than the adoption act, and when it appears that the Louisiana adoption is not recognized in Alabama as effectual to transmit real estate under its law of descents, the plaintiffs' case fails.

The cases asserting the principle that enforces a defective adoption proceeding as a contract to adopt, and confers on the child the same property rights as the law would have conferred if the adoption had been valid, do not control this case, in which the adoption did not fail from invalidity. That line of cases, in which a contract to devise and bequeath, separate and apart from the ineffectual means selected for its accomplishment, is found to exist, and in which the separate contract is specifically enforced, as in case of a defectively executed will, is to be distinguished from this case, in that in this case the agreement was solely to adopt and the rights of inheritance claimed were a mere incident to the adoption. The agreement to adopt was validly

carried out, and the plaintiffs' rights to the property in question failed, not because of any failure to legally carry out the agreement of adoption, but because the specific rights claimed were not legally incident to the adoption agreed upon.

The case is that of parties intending to do a specific thing and being mistaken as to its legal effect. If the mutual intent is to do a specific thing, only, mistake as to the effect of the thing intended to be done cannot affect the rights of the parties. If there is a failure to validly do what parties intend to do, equity may remedy the invalid act and treat as done that which the parties intended to do. Equity, however, never interferes to accomplish that which the parties themselves never intended to do, because either originally or subsequently it appears to be more equitable than what the parties intended and did. Equity never makes agreements for parties which it then enforces.

There are subsequent declarations of the adopting parent found in the record, which tend to indicate his belief that his adopted children would acquire at his death all his property through the adoption proceedings. Those declarations were based on a mistaken conception of the legal effect of the adoption on the transmission of title to the after-acquired Alabama property. They do not reflect light on what the parties intended to accomplish, at the time of the adoption, at which time the adopting parent had no property in Alabama. They may indicate a general purpose or desire on the part of the adopting parent that his adopted children should by virtue of the adoption inherit all his property. Such an ineffectual purpose or desire can neither confer or divest property rights.

The demurrer to the bill as amended is sustained.